# FIRST DEPARTMENT.

## GENERAL TERM, MARCH, 1874.

SINCLAIR v. NEILL *et al.*, appellants.

*Fraud — rescission of sale for — Amendment — power of referee to allow.*

Plaintiff purchased the contents of a store and also the lease of the same, giving in payment his notes and a mortgage. After several months, during which time he had sublet a part of the store, receiving several hundred dollars therefor, and sold a part of the goods, he tendered back the goods in his possession and the lease and demanded the mortgage and notes, claiming that he had been induced to purchase by the fraudulent representations of the vendors. In an action brought to set aside the sale and cancel the mortgages and notes, *held* that plaintiff, having put it out of his power to return the property received by him, was not entitled to a rescission of the sale.

The referee before whom the case was tried, allowed, against defendants' objection, plaintiff to amend the complaint by alleging that he had sustained damages by reason of the false and fraudulent representations set forth therein, in the sum of $5,000, and demanding a recovery thereof. *Held*, that the amendment constituted an independent right of action not within the issues referred, and the referee had no power to allow it.

APPEAL from a judgment in favor of the plaintiff, Robert A. Sinclair, entered upon the report of a referee.

The action was brought to set aside a sale of a store, fixtures and leases, and to compel the surrender and cancellation of a mortgage of $3,000 executed by defendant Jane Alley to the defendant James Neill, and of two notes of $500 each given by plaintiff to the defendants Neill, Robert Thomas and one Palmer, constituting the firm of Neill & Co., in payment for said store. The mortgage was assigned by Neill to the defendant Christopher Pullman, who, it is alleged, holds the same in trust to secure a debt of said firm. The grounds of the action were fraudulent representations made by the defendants, or some of them. Subsequently

to the bringing of this action, the defendant Pullman commenced an action against the defendant Alley to foreclose the said mortgage, and Alley pleaded the pendency of this action and that the mortgage was void by reason of the fraudulent representations which are set up in this case. The judgment obtained below in favor of Alley was reversed, on the ground that this action was not a bar and that the plaintiff in this action had no right to rescind the contract, and that the bond and mortgage were valid instruments against Alley, irrespective of the alleged frauds upon the plaintiff. See *Pullman* v. *Alley*, 53 N. Y. 637. The questions involved in the present appeal are fully stated in the opinion.

*John H. White* and *M. L. Townsend,* for appellants.

*C. Frost,* for respondent.

DANIELS, J. The evidence and the referee's report show that the plaintiff was induced, by fraudulent representations made by the defendant Robert Thomas, and assented to by the defendant James Neill, to purchase a store of goods, together with the fixtures and leases, extending from the 15th day of February, 1869 — the time of the purchase — to the 1st of May, 1871, for the price of $4,000. The purchase price was secured by a bond and mortgage, which the plaintiff procured to be executed and delivered, and his own two notes of $500 each. It was part of the consideration of the sale that the defendant Thomas should be a partner in the business with the plaintiff, and in compliance with that understanding, they jointly carried it on until near the 1st of the following month of June. By that time the goods, of which the stock in the store consisted, were entirely sold out, the sale of the entire residue being made on the 2d day of that month. During the same time the plaintiff sublet the upper portions of the premises included in the leases, and received from $500 to $600 rent for the same. By the 22d day of May, 1869, the plaintiff had discovered the fraud by which he was induced to make the purchase, and offered to surrender and return the goods he then had — the fixtures in the store and the leases — to the defendants, who were the vendors, and demanded a return of his notes, and the bond and mortgage he had procured to be made and delivered. They refused to comply with the request made, and this action was then brought to rescind the purchase, and procure a return of the notes, bond and mortgage.

Before the 3d of June, 1869, the plaintiff gave notice to the defendants interested in the transaction that he should not pay the rent becoming due on the lease on the 1st of that month. The landlord, for the non-payment of that rent, repossessed himself of the premises by summary proceedings under the statute.

As the facts of the case existed when the action was commenced, the plaintiff had been so far benefited by the purchase that by his sub-tenants, and the occupancy of himself and his partner, he had enjoyed the property demised by the leases assigned to him from the 15th of February to the end of May, and received the proceeds derived from the sale of at least half the stock of goods transferred to him. To that extent he had put it out of his power to return what he had received by the purchase, and on the 2d of June he still further extended that incapacity by disposing of the residue of the stock. This rendered him incapable of rescinding the contract of sale, and by so doing entitling himself to a return of the notes, bond and mortgage given for the purchase price. In order to maintain the right of a party, either at law or in equity, to rescind a sale or purchase of property on account of fraud, it is necessary that the party designing to do so shall be able to restore and return what he himself has received as the equivalent of what he may have been induced to part with by means of the fraud. Where that cannot be done, the fraudulent transaction cannot be annulled by the party defrauded. It cannot be rescinded in part and affirmed in part as it would be by the retention of any of its fruits. An enjoyment of the advantages of the transaction precludes the party receiving them from repudiating that portion which may prove to be detrimental to his interests. This rule is very well settled, and it constituted a complete answer to the plaintiff's action as one in equity for the rescission of the sale. *Cobb* v. *Hatfield*, 46 N. Y. 533; *Springer* v. *Dwyer*, 58 Barb. 189; see, also, the decision on this transaction by court of appeals in *Pullman* v. *Alley* 53 N. Y. 637.

But, notwithstanding this inability, the learned referee held both the notes given by the plaintiff and the bond and mortgage to be invalid and without consideration, because they had been procured by the false and fraudulent representations made by the defendants, Thomas and Neill, and judgment was entered in accordance with this conclusion: This conclusion cannot be sustained; for, even though given for property which the plaintiff was induced to purchase by means of fraudulent representations, there was a sufficient

consideration to sustain them, as long as the transaction was in such a condition as to render the plaintiff incapable of rescinding it. He could not retain its fruits and still resist a liability for the purchase price. The party defrauded is not deprived, in such a case, of a proper remedy for the redress of the injury produced by the fraud perpetrated, for he may maintain an action for the recovery of such damages as, with what he may have received by the sale, will form an equivalent for what, by the terms of the purchase, he was entitled to have as its fruits. And beyond that he may make use of his right for the recovery of damages, either by way of maintaining an independent action for their recovery, or by way of recoupment or counter-claim, in reduction of the seller's claim for the purchase price. The law gives the purchaser his election. He may assert his right to damages for the fraud by way of an action in his own behalf or avail himself of it as a defense to a suit for the recovery of the purchase price of the property sold. *Beecker* v. *Vrooman,* 13 Johns. 302; *Van Epps* v. *Harrison,* 5 Hill, 63; Code, § 150, subd. 1; *Boston Silk and Woolen Mills* v. *Eull,* 37 How. 299.

During the progress of the trial the plaintiff applied to the referee for leave to amend the complaint by alleging that he had sustained damages, by reason of the false and fraudulent representations contained in his complaint, to the amount of $5,000, and demanding a recovery of such damages, and that the same, because of the vendor's insolvency, should be declared a lien upon any amount found due from him on account of the sale. The defendants objected to the allowance of the amendment, but the referee overruled the objection and permitted it to be made. This objection, though general in its terms, was sufficient to present the point of the referee's power to allow the amendment to be made, and no amplification of it could have been of any benefit to the referee or the plaintiff, because the ground on which it stood could not be changed by any act of either. *Merritt* v. *Seaman,* 6 N. Y. 168.

As the complaint contained nothing upon the subject of the plaintiff's right to damages, this amendment introduced an entirely new element into the case, constituting of itself an independent right of action not within the issues referred to the referee to try. It was not simply supplying a variance by an amendment, which the referee had the power to do; for, as the plaintiff could not maintain the action in the shape he had placed it by his complaint, because of his inability to rescind the sale, his case was unproved in its entire

scope and meaning, and that could not be corrected by any amendment the referee had the power to allow. Code, § 171; *Ransom* v. *Wetmore,* 39 Barb. 104; *Whitcomb* v. *Hungerford,* 42 id. 177; *Ford* v. *Ford,* 53 id. 525; *Degraw* v. *Elmore,* 50 N. Y. 1; *Ross* v. *Mather,* 51 id. 108.

The only mode by which that could be properly done was by suspending the trial until relief could be obtained by special motion on notice before the court. The power by that proceeding is ample to meet such emergencies as the plaintiff's case was found to encounter; and it was the only mode in which he could be relieved without a discontinuance of the action and the institution of a new suit. On such a motion the parties have an ample opportunity for a complete presentation of all the facts affecting the propriety of the amendment, and proper terms can be prescribed to guard against surprise and injustice. It is true the referee might secure to the parties the observance of all these rights, but the legislature did not deem it proper to confer upon him the power to hear and dispose of such an application. The case allowed to be alleged by the amendment, was distinct and different from that which the complaint had previously presented, and that the referee had no authority to permit. It, in effect, gave the plaintiff the benefit of a new cause of action, without which he must of necessity have had judgment against him. It may be unfortunate for the plaintiff, who seems to have been grossly deceived and defrauded by the misconduct of the persons he dealt with, that his suit was not brought in the form the law prescribed, for the case he was able to prove; but courts of justice have no power, for that reason, to disregard legal requirements in that respect, and award relief which, under well-settled principles, can only be administered under different circumstances from those disclosed by the complaint.

After allowing the amendment the referee permitted the plaintiff to recover damages occasioned by the fraud; deducted the value of the stock purchased and sold by the plaintiff from the amount, and directed judgment for the balance of $186.07 in his favor. The relief given was not even hinted at in the original complaint, and for that reason it was wholly unauthorized.

By the judgment which has been recovered the entire consideration received for the property sold has been annulled, the plaintiff has enjoyed the use and proceeds of the leasehold premises for over three months, and received the avails of the goods delivered to him,

amounting to over $1,600, and still has a judgment for a balance in his favor. Such incongruous results cannot ordinarily be secured in the same action. Certainly not under the circumstances shown in this case. As the plaintiff cannot rescind, his relief must be confined to redress by way of damages, which possibly may be deducted from the sum he may owe to the vendors of the property, if their insolvency shall be satisfactorily established (*Smith* v. *Felton*, 43 N. Y. 419), and such redress must assume the validity of the bond, mortgage and notes, so far as they may exceed the damages which equitably should be deducted from them on account of the plaintiff's loss resulting from the fraud. How far he may be entitled to relief in that respect it is not necessary now to consider, but as he is not a party to the bond and mortgage, he will probably be found unable to reduce the amount secured by them by any damages he may be entitled to recover. His relief, as long as he cannot rescind, must consist in damages, and not in annulling the bond, mortgage and notes given for the property purchased. The judgment has awarded to him more than, in any view of the circumstances, he can be entitled to receive.

It should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and DONOHUE, J., concurred.

*Judgment reversed and new trial ordered.*